Kogie UPSHAW, Latisha Washington, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

GEORGIA (GA) CATALOG SALES, INC., John Gill, and unknown entities and individuals, Defendants.

No. 4:00–CV–86–2(CDL).

United States District Court,
M.D. Georgia,
Columbus Division.

April 3, 2002.

Ben B. Philips, Stanley L. Merritt, Jr., Gary O. Bruce, Columbus, GA, Richard A. Fisher, Jimmy W. Bilbo, Cleveland, TN, Jack L. Block, Chicago, IL, for plaintiffs.

John E. Floyd, Neeli Ben–David, Atlanta, GA, William L. Tucker, Columbus, GA, for defendants.

## *ORDER*

LAND, District Judge.

### I. *INTRODUCTION*

The Court has pending before it Plaintiffs' Motion to Proceed As a Class Action. Plaintiffs, Kogie Upshaw and Latisha C. Washington, individually and on behalf of all others similarly situated (collectively "Plaintiffs"), claim that Defendants engaged in unauthorized and unenforceable loan transactions, charging and collecting an interest rate that exceeds the maximum interest rate under Georgia law. Defendants are Georgia Catalog Sales, Inc. ("GCS"), John Gill ("Gill"), who allegedly owned and operated the business, and unknown entities and individuals (collectively "Defendants"). Plaintiffs allege in their First Amended Class Action Complaint that Defendants violated: (1) Georgia's interest and usury statutes, O.C.G.A. § 7–4–2 and O.C.G.A. § 7–4–18 (Count I); and the federal Racketeer Influenced and Corrupt Organizations Act("RICO"), 18 U.S.C. § 1961 *et seq.* (Count II).[1]

Plaintiffs seek certification of a class of all persons who after May 3, 1996, engaged in transactions at any of GCS's locations in Georgia in which the person received a cash advance and gave GCS a check. Plaintiffs'

---

1. The Court notes that Plaintiffs are not proceeding under the "fraud" provisions of the RICO statute. Therefore, party specific issues, such as detrimental reliance, that are typically associated with fraud claims and that can make a class action unmanageable are not involved in this case.

motion has been fully briefed by the parties. Furthermore, the Court received evidence and heard argument from counsel at a hearing on January 30, 2002. Having fully considered Plaintiffs' motion and Defendants' opposition to the motion, the Court finds pursuant to Rule 23 of the Federal Rules of Civil Procedure that a class should be certified in this case. For the reasons set forth below, the Court certifies the following class: all persons who after May 3, 1996, engaged in transactions at any of GSC's locations in Georgia in which the person received a cash advance and gave GCS a check, *and who never obtained any merchandise using any catalogue gift certificate issued by GCS.*[2]

## II. *FACTUAL BACKGROUND*

Plaintiffs contend that Defendants engaged in a common course of conduct in which they advanced money and gave catalogue gift certificates to consumers in exchange for a written document in the form of a personal check. Evidence was submitted at the class certification hearing from which a fact finder could conclude that every customer that engaged in a transaction with GCS was treated substantially the same. Any differences in the way transactions were handled from one customer to the next related to the amount of the cash advance the customer sought with a corresponding, but directly proportional, difference in the charge for the cash advance and the amount of the gift certificate.[3]

Evidence was presented at the class certification hearing that Defendants market their business to potential customers as a cash advance service.[4] Defendants' advertisements seek to induce persons who need money to visit their business to obtain a cash advance. One such advertisement introduced at the class certification hearing, soliciting customers for all of GCS's 16 Georgia stores, states in bold letters: **"ADVANCE TIL PAYDAY."** The advertisement promotes Defendants' cash advance service by offering up to $500 "instant cash." The advertisement states: **"NEED EXTRA CASH $NOW$. Can't wait until payday. We Make Today Your Next Payday."** The advertisement continues: "Write your check— **GET CASH. We will deposit it on your next payday."** This solicitation does not mention "gift certificates." A reasonable fact finder and prospective customer could conclude from Defendants' solicitations that Defendants are in the short-term lending business.

Plaintiffs contend that these transactions are loans at usurious and illegal rates, exceeding 16% per annum simple interest and 5% interest per month in violation of O.C.G.A. § 7–4–2(a)(2) and § 7–14–18(a). Defendants contend that the difference between the amount of the cash advance and the customer's check is not interest because the customers are provided with catalogue gift certificates which have some value.

---

**2.** The class certified by the Court is more limited than the one sought to be certified by Plaintiffs. The Court finds that by limiting the class to those persons who did not redeem a catalogue gift certificate, the Court will not have to inquire into whether Defendants are entitled to set-offs for certain class members who redeemed catalogue gift certificates. The Court finds that this limitation of the class will make the class more manageable, clearly satisfying the "superiority" requirement of Rule 23(b), Fed.R.Civ.P. The Court further notes that this case was filed on May 3, 2000. The class period commences four years prior to the filing of the lawsuit, which corresponds with the statute of limitations for Plaintiffs' RICO claims.

**3.** Plaintiffs allege in their complaint and the evidence submitted at the class certification hearing appeared to confirm that GCS has standard rates that it charges all customers. Typically, customers pay $30 for every $100 advanced. For exam-

ple, Plaintiff Kogie Upshaw claims she originally received a $200 cash advance in exchange for her check in the amount of $260. Plaintiff Latisha Washington wrote a check for $130 and received a cash advance of $100. For each $100 cash advance customers also received a catalogue gift certificate with a face value of $30.

**4.** Evidence was presented at the class certification hearing that during the relevant time period GCS operated 16 stores located across the State of Georgia. Testimony was submitted at the hearing that one of GCS's stores was open six days a week, Monday through Friday, from 9:30 A.M. to 6:00 P.M., and Saturday, from 10:00 A.M. to 4:00 P.M. In 1999, approximately 50 or 60 customers came into that store on a daily basis, and currently 10 to 25 customers a day visit that store. No evidence was presented to suggest that this store was atypical of the other GCS stores.

Plaintiffs contend that the catalogue gift certificates are worthless and a sham designed as part of an overall scheme to disguise illegal and usurious interest. As the Court has previously found in denying Defendant's motion to dismiss, a jury question exists on the issue of whether the gift certificates have any real value or are part of a scheme to disguise the amount of interest charged on short-term loans. Although Defendants introduced evidence at the class certification hearing on the issue of the redeemability of the gift certificates and the value of items that could be purchased with them, the Court finds for class certification purposes that a disputed issue of fact exists as to whether the catalogue certificates have any value.

In support of their argument that the catalogue gift certificates have no value, Plaintiffs point out that gift certificates are not even mentioned in Defendants' advertisements. Moreover, Plaintiffs allege (and no contrary evidence has been submitted by Defendants) that a high percentage of customers do not redeem the gift certificates. Furthermore, testimony presented at the hearing by Defendants' "experts" creates a disputed issue as to whether a reasonably prudent customer would see sufficient value in the certificates to go to the trouble of sending them in, waiting on delays in shipping, and receiving items that are not significantly cheaper than similar items that could be purchased off the shelf after the shipping and/or handling costs are added.

At this stage of the proceedings, the Court is not to rule on the merits of Plaintiffs' claims. Without deciding the issue, however, the Court is satisfied for purposes of determining whether a class should be certified in this case that a jury question exists on whether the certificates have any value and thus whether the difference in the amount of the cash advance and the amount of a customer's check is usurious interest. Therefore, the Court finds that the evidence submitted at the class certification hearing regarding the value of the gift certificates

standing alone does not prevent class certification.[5]

## III. REQUIREMENTS FOR CLASS CERTIFICATION

"The class-action device was designed as 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *General Tel. Co. v. Falcon,* 457 U.S. 147, 155, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), *quoting, Califano v. Yamasaki,* 442 U.S. 682, 700–701, 99 S.Ct. 2545, 61 L.Ed.2d 176. "Class relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class." *Id.* "For in such cases, the class action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every class member to be litigated in an economical fashion under Rule 23 [of the Federal Rules of Civil Procedure]." *Ibid.* In determining whether a class should be certified, the Court must consider whether the maintenance of the class action will advance the efficiency and economy of litigation. *Id.,* at 159, 102 S.Ct. 2364.

In addition to promoting the efficiency and economy of litigation, the class-action device also provides a key to the courthouse for parties with legitimate claims whose access to justice may be slammed shut because the individual amounts of their claims make it economically infeasible to pursue them on an individual basis. *See Deposit Guar. Nat'l Bank v. Roper,* 445 U.S. 326, 339, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

"A class action may be maintained only when it satisfies all the requirements of Fed. R.Civ.P. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1005 (11th Cir.1997). Plaintiffs contend that they have satisfied Rule 23(a) and Rule 23(b)(3). In determining whether Rule 23(a) and Rule 23(b)(3) have been satisfied, the

---

**5.** The Court finds that if a jury finds that the catalogue gift certificates are worthless and are a part of a scheme to disguise illegal and usurious interest, the amount of that interest could easily be calculated in a uniform manner by simply determining the difference between the amount of the customer's check and the amount of the cash advance.

Court does not evaluate the probable outcome of the case. *Kleiner v. First Nat'l Bank,* 751 F.2d 1193, 1202 (11th Cir.1985). However, "the class determination [does] generally involve considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978). Sometimes the issues are plain enough from the pleadings, but "sometimes it may be necessary for the Court to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co. v. Falcon,* 457 U.S. at 160.

At this juncture, the Court must determine whether Plaintiffs have demonstrated that they have satisfied the provisions of Rule 23. This does not permit the Court to base its certification on "presumptions" that the Court knows will never be able to be proved at trial. *See Sikes v. Teleline, Inc.,* 281 F.3d 1350 (2002).[6] However, this likewise does not mean that Plaintiffs are required to prove their underlying claims to obtain class certification. In determining that Rule 23 has been satisfied in this case, the Court has considered the pleadings, the parties' submissions relating to class certification, the testimony and documents introduced at the hearing before the Court on January 30, 2002, and argument of counsel.

### A. Fed.R.Civ.P. 23(a)(1)—Numerosity

■ Consistent with the policy of advancing judicial economy, Federal Rule of Civil Procedure 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. In evaluating whether the numerosity requirement has been met, precise enumeration of class members is not necessary for the action to proceed as a class action. *See Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir.1983). However, Plaintiffs must provide some basis that a good faith estimate of the size of the potential class satisfies the numerosity requirement. The Eleventh Circuit, while recognizing that there is no strict numerical test for determining impracticability of joinder, has implied that a class of more than 40 persons could satisfy the numerosity requirement. *See Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986).

■ The Court finds that the proposed class in this case clearly exceeds 40 persons and further finds that it is so numerous that joinder is impracticable. Plaintiffs estimate that the class numbers "in the hundreds, if not thousands." Defendants do not seriously dispute this figure. Instead, Defendants contend that Plaintiffs have failed to satisfy the numerosity requirement with "evidence" as to the size of the class. The Court finds Defendants' argument unpersuasive.

GCS's own advertisement lists 16 different locations in Georgia, which have been operating for a number of years. The size of Defendants' operations supports the reasonable conclusion that numerosity has been established. Evidence was presented at the class certification hearing that in 1999 one of Defendants' stores served 50 to 60 customers a day. The store was open six days a week. Currently, an average of 10 to 25 customers use Defendants' services each day. A simple calculation reveals that the potential class in this case is substantial and that an estimated class of hundreds, possibly thousands, of members is a reasonable good faith estimate.

---

**6.** The Court finds that this case is distinguishable from *Sikes.* In *Sikes,* the district court in certifying the class *presumed* that the class members had met the *reliance* element of their underlying claim. If the district court had not made that presumption, then proof of *reliance* would have been required for each individual claim at trial, thus making the class action unmanageable. The Eleventh Circuit held in *Sikes* that district courts should not make presumptions to facilitate the certification of class actions, explaining that plaintiffs seeking class certification must establish that Rule 23 has been satisfied.

In this case, reliance is not an element of the underlying claim. Moreover, if the class consists only of those persons who did not redeem gift certificates and the jury finds that the gift certificates are worthless and simply a scheme to disguise usurious interest, it will not be necessary to make an individual inquiry as to the value of the individual gift certificates on a case by case basis. Unlike *Sikes,* the Court is not *presuming* that the gift certificates are worthless. Instead, the Court finds that in light of the more limited class certified by the Court, a jury can make that determination on a class-wide basis and not on a class-member-by-class-member basis.

Accordingly, the Court finds that joinder of all of the class members in this case is impracticable, and the numerosity requirement has been met.

### B. Fed.R.Civ.P. 23(a)(2)—Commonality

Federal Rule of Civil Procedure 23(a)(2) requires that for certification, there must be "questions of law or fact common to the class." Class relief is particularly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class. *See Califano v. Yamasaki*, 442 U.S. 682, 701, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979).

The common nucleus of operative facts in this case shows that Plaintiffs and the class entered into the same types of transactions with GCS. As a result, this case gives rise to numerous common issues, including:

    (a) Whether the transactions between the class members and GCS are loans or advances bearing interest;

    (b) Whether the interest charged on the loans violates the Georgia usury laws;

    (c) Whether the loans and interest are unlawful debts, the collection of which violates RICO;

    (d) Whether the catalogue gift certificates are worthless and part of a sham to conceal the true nature of the loans.

The Court finds that there are questions of law and fact common to the members of the class, and the commonality requirement has been met.

### C. Fed.R.Civ.P. 23(a)(3)—Typicality

To satisfy the typicality requirement, Plaintiffs must show that their claims arise from the same practice or course of conduct that gives rise to the claims of the other class members and that the individual claims of the class members are based upon the same legal theory. The typicality requirement can be satisfied even if factual distinctions exist between the claims of the class representatives and the other members of the class. "A strong similarity of legal theories will satisfy the typicality requirement despite substantial factual differences." *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir.1985).

Plaintiffs contend that GCS offered loans to each class member using the same practices and procedures. All class members are seeking the same relief based upon the same legal theory. Defendants do not dispute that they engaged in standardized transactions, but argue that Plaintiffs have not produced evidence establishing the typical practices and procedures. Contrary to Defendants' argument, Plaintiffs' well-pled allegations in the complaint, as well as the testimony and documents introduced into evidence at the January 30, 2002, hearing, do in fact demonstrate the practice engaged in by Defendants. To initiate a transaction, the customer fills out a standardized "check acceptance card." This card contains detailed information about the customer and records every transaction. Each time a customer writes a check and receives cash and gift certificates, the customer is required to fill out a standardized form called a "Gift Club Purchase Order." In exchange for receiving a cash advance, the customer must give Defendants a check and accept gift certificates. For each $100 cash advance, the customer provides Defendants with a check for the amount of the cash advance plus $30 for each $100 advanced. The $30 per $100 rates do not vary. Furthermore, each customer receives a $30 catalogue gift certificate for each $100 advanced.

The Court finds for class certification purposes that Defendants had a standard practice for all of its customers, including Plaintiffs and the other members of the potential class. All class members used the same standardized forms, and the terms of each transaction were essentially the same. Moreover, the alleged unlawful conduct (the charging of usurious and unlawful interest on loan transactions) is the same for each class member. Although the gross amount of "interest" charged may have varied depending on the amount of cash advanced, the rates were the same. Consequently, Plaintiffs' claims arise from the same course of conduct by Defendants that other class members' claims arise from, and the same legal theory (alleged usurious and unlawful interest) ap-

plies to Plaintiffs' claims and to the claims of other class members. Accordingly, the Court finds that the typicality requirement has been met.

### D. Fed.R.Civ.P. 23(a)(4)—Adequacy of Representation

Federal Rule of Civil Procedure 23(a)(4) requires that the representative parties will fairly and adequately protect the interests of the class. The Eleventh Circuit has stated that "[t]he adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced and generally able to conduct the proposed litigation, and of whether plaintiffs have interests antagonistic to those of the rest of the class." *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985).

Plaintiffs Upshaw and Washington have undertaken the cause of all class members. They share the common interest with the class in pursuing the same claims and seeking the same relief. All class members are customers of Defendant GCS who engaged in the same types of transactions. In that regard, there are no antagonistic or conflicting claims between Plaintiffs Upshaw and Washington and the other members of the class.

■ Defendants contend that Plaintiff Upshaw is not an adequate class representative because she may be subject to a unique defense.[7] Defendants claim two of her checks were returned for insufficient funds. Defendants' argument does not suggest any disabling conflict of interest, and therefore does not disqualify Upshaw under the Eleventh Circuit's test for adequacy of representation. Defendants also suggest that they may be entitled to a set-off. A claim for a set-off only affects the calculation of damages. Differences in the amount of damages or even the availability of certain defenses against a class representative do not render

his or her claim atypical. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir.1984). The Court finds that Upshaw and Washington are adequate class representatives.[8]

Plaintiffs have retained Gary O. Bruce, Ben B. Philips, Stanley L. Merritt, Jr., Jack L. Block, and Richard A. Fisher as their counsel. Plaintiffs' counsel as a group include experienced trial counsel who have engaged in major class actions similar in size, scope, and complexity to this case. The Court is satisfied that Plaintiffs' counsel are qualified, experienced, and generally able to conduct the litigation. In fact, Defendants do not appear to challenge the qualifications of Plaintiffs' counsel. Based on the foregoing, the Court finds that Plaintiffs and Plaintiffs' counsel meet the requirements of Federal Rule of Civil Procedure 23(a)(4).

### E. Fed.R.Civ.P. 23(b)

■ Having determined that Plaintiffs have satisfied each of the requirements of Rule 23(a), the Court must next determine whether Plaintiffs can satisfy at least one of the requirements of Rule 23(b). The Court finds that Plaintiffs meet the requirements of Rule 23(b)(3). Rule 23(b)(3) requires that questions of law or fact common to the members of the class *predominate* over any questions affecting only individual members, *and* that a class action is *superior* to other available methods for the fair and efficient adjudication of the controversy.

#### 1. Predominance

In this case, Defendants' conduct was substantially the same with respect to all members of the class. This conduct gives rise to Plaintiffs' class-wide liability claims for violation of the Georgia usury laws and RICO. The Defendants' primary defense, based

---

7. Defendants have not claimed that Washington was inadequate. However, since the Court certifies a more limited class than the one sought by Plaintiffs, Defendants shall be permitted through a motion for reconsideration to contest Washington (and Upshaw's) adequacy if they have evidence that they are not members of the more limited class. Based upon the pleadings, the Court finds that they are members of the more limited, certified class.

8. Defendants contend that usury is a personal claim, and therefore Plaintiffs cannot pursue such claims as a class action. The Eleventh Circuit appears to disagree with Defendants' contention. *See Moore v. Comfed Sav. Bank*, 908. F.2d 834 (11th Cir.1990).

upon the gift certificates, applies to the class as a whole. This is precisely the type of case for which the class action procedure was intended.

█ The only significant difference from class member to class member in this case appears to be the amount of individual damages recoverable. Variations in the amount of damages suffered by individual class members will not preclude a finding of predominance or defeat certification of the class. The existence of some separate issues of law and fact, particularly regarding damages, does not negate class action certification. Although class treatment may not serve to lessen the Plaintiffs' burden of proof on the elements of the underlying claim, including damages, the Eleventh Circuit has recently noted:

> This is not to say that it would be impossible to certify any class because of damages problems. In cases involving damages that may be calculated by a reliable formula—such as overcharge cases or *usury case*—damages are not much of a hurdle at all to certification.

*Sikes v. Teleline, Inc.*, 281 F.3d at 1365, N. 40 (2002) (Emphasis added).

In this usury case, determining individual damages is a matter of mathematical calculation. It is clear that common questions of law and fact predominate over any questions affecting only individual class members. Accordingly, the predominance requirement of Rule 23(b)(3) is met.

### 2. *Superiority*

Rule 23(b)(3) also requires an examination of whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). In this case, the amounts in controversy for each class member are relatively small. Because the substantial costs associated with prosecuting such claims appear far greater than any potential individual recovery, it is unlikely that class members individually could afford to pursue claims against the Defendants, no matter how meritorious their claims. Moreover, if these claims were litigated separately, repeatedly litigating the same issues would have "lamentable consequences for judicial economy and the finality and consistency of judgments." *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1554 (11th Cir.1986). Trying these small claims once before a single court provides access to justice for many claimants who may otherwise be denied a key to the courthouse door. Furthermore, even if sufficient incentive existed for individual claimants to pursue their claims separately, class action treatment is far superior to having the same claims litigated repeatedly, wasting valuable judicial resources.

Defendants' principle argument in opposition to class certification is that this case is not manageable as a class action. Therefore, according to Defendants, a class action is not the superior method for resolving these claims. Defendants are correct that the Court must evaluate the difficulties associated with managing the class action and determine whether those difficulties outweigh the benefits of (1) providing access to the courthouse for these individual small claims and (2) avoiding multiple, wasteful litigation.

█ Evidence was presented at the class certification hearing that Defendants keep a record of each customer's transactions. Those records show how much each customer received as a cash advance, the amount that each customer's check exceeded his advance, and whether the customer redeemed the catalogue gift certificates. Moreover, as previously described, the rates charged for the cash advances were uniform and easily calculated. Therefore, no insurmountable manageability problem exists regarding a determination of the amounts class members received as a cash advance and how much they paid for the advance. Consequently, if the trier of fact concluded that these transactions were loans and that the gift certificates were a worthless component of a sham or scheme to disguise short-term, high interest loans, then they could easily determine the amount of the "interest" charged and whether it was usurious.[9] Under these circum-

---

9. By limiting the class in this case to members *who did not redeem* catalogue gift certificates, the

Court eliminates the need to differentiate between class members based upon the assignment

stances, the Court does not foresee any insurmountable proof problems regarding the class members' transactions that would render this case unmanageable.[10]

In this case, the only alternatives to a class action are either no recourse for hundreds of potentially injured consumers or, in the unlikely event that these consumers became aware of their rights and could locate counsel, a multiplicity of suits raising essentially the same claims. Balancing the manageability challenges involved in this litigation with the potential denial of any relief to hundreds of allegedly injured consumers and/or the clogging of our court system with multiple actions involving the same factual and legal issues, the Court finds that a class action is superior to any other available method for the fair and efficient adjudication of this controversy. Accordingly, Rule 23(b)(3) has been satisfied.

## IV. *CONCLUSION*

Based on the foregoing, it is hereby ordered as follows:

1. The Court finds that the requirements of Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure are met and the Court certifies the following class:

   All persons who after May 3, 1996, engaged in transactions at any of GCS's locations in Georgia, in which the person received a cash advance and gave GCS a check, and who never redeemed any catalogue gift certificates that were provided to the person as part of the transaction.

2. The Court finds that Kogie Upshaw and Latisha Washington are adequate class representatives.

3. The Court finds that Gary O. Bruce, Ben B. Philips, Stanley L. Merritt, Jr., Jack L. Block and Richard A. Fisher are qualified to serve as counsel in this class action and the Court designates them as Class Counsel.

4. The Court directs the Plaintiffs to prepare and submit to the Court within 14 days of the date of this order a proposed notice to the class in accordance with Rule 23(c)(2) of the Federal Rules of Civil Procedure.

5. The Court directs the Defendants within 60 days of the date of this order to provide a class list to Plaintiffs, in a readily useable computer format, if possible, which includes the names, the last known addresses, telephone numbers, and social security numbers of all class members of the class certified in this case.

---

of some value to the items that they obtained using the gift certificates. The trier of fact will be able to determine based upon the evidence whether the catalogue gift certificates had any value to the members of the class who chose not to redeem them. If the trier of fact concludes that the class members' choice not to redeem the gift certificates combined with other evidence establishes that the gift certificates had no (or *de minimis*) value, then the class can be reasonably managed. If Plaintiffs are unable to convince the trier of fact that the gift certificates had no (or *de minimis*) value, then Defendants will likely prevail on the merits. The possibility that Defendants may prevail on the merits does not preclude class certification.

**10.** The Defendants rely upon the Eleventh Circuit's decision in *Andrews v. AT & T Co.*, 95 F.3d

1014 (11th Cir.1996), for their contention that individual issues predominate and the case is unmanageable. They also cite the recent decision of *Sikes v. Teleline, Inc.*, 281 F.3d 1350 (2002). *Andrews* and *Sikes* involved 900–number telephone programs which allegedly involved illegal gambling. The Eleventh Circuit found insurmountable problems because reliance would have to be proven on an individual basis, the nationwide class implicated the laws of fifty states, and the defendant had no records to prove injury and damages. Since reliance is not an issue in the instant case, the class is limited only to the State of Georgia, and Defendants have detailed records, *Andrews* and *Sikes* are distinguishable and are not controlling here.