Denise MINTER et al.

v.

WELLS FARGO BANK, N.A. et al.

Bradley Petry et al.

v.

Prosperity Mortgage Co. et al.

Civil Action Nos. WMN–07–3442, WMN–08–1642.

United States District Court, D. Maryland.

May 22, 2012.

---

17. In light of this disposition, the defendants' request for a hearing is moot. (ECF No. 165.)

Richard S. Gordon, Benjamin Howard Carney, Thomas Macy McCray–Worrall, Gordon and Wolf Chtd., Towson, MD, Cyril Vincent Smith, III, William K. Meyer, Baltimore, MD, for Denise Minter et al.

John Augustine Bourgeois, Kramon and Graham PA, Baltimore, MD, Melinda F. Levitt, Foley and Lardner, Brian M. Forbes, David D. Christensen, Irene Claire Freidel, Boston, MA, David T. Case, Jay N. Varon, Jennifer M. Keas, Jennifer Nadege Toussaint, Thomas M. Hefferon, Barbara E. Rutkowski, David L. Permut, Sirisha Venkata Kalicheti, Washington, DC, for Wells Fargo Bank, N.A. et al.

## MEMORANDUM

WILLIAM M. NICKERSON, Senior District Judge.

■ Pending before the Court is Plaintiffs' Motion to Direct Notice and Administrative Schedule, ECF No. 293.[1] Defendants Wells Fargo Bank, N.A. and Wells Fargo Ventures, LLC (collectively, Wells Fargo) filed an opposition, ECF No. 342, which Defendants Prosperity Mortgage Company, Long & Foster Real Estate, Inc., and Walker Jackson Mortgage Corporation joined, ECF No. 343.[2] The motion is now ripe.[3] Upon review of the pleadings and the applicable case law, the Court has determined that no hearing is necessary, Local Rule 105.6, and that the motion will be granted, consistent with the conditions set forth in this memorandum.

## I. FACTS AND PROCEDURAL HISTORY

On May 3, 2011, 274 F.R.D. 525 (D.Md. 2011), the Court granted Plaintiffs' Motions for Class Certification in the related captioned matters, *Minter* and *Petry*, certifying a class spanning the entire time period in question in *Petry*, a "timely" class in *Minter*, and leaving open the possibility for certification of a "tolling" class in *Minter*. ECF No. 254. On January 5, 2012, 279 F.R.D. 320 (D.Md.2012), the Court granted Plaintiffs' Motion for Certification of the *Minter* tolling class. ECF No. 308. On March 14, 2012, 280 F.R.D. 244 (D.Md.2012), the Court granted

---

1. All ECF numbers refer to filings in the *Minter* case.

2. This filing is inaccurately characterized on the Case Management/Electronic Case Filing system as a "Joint Motion for Joinder." Though it is entitled "Joinder of Response to Plaintiffs' Motions," it is not a motion for joinder, but rather simply a means through which the Defendants that did not file their own opposition noted their support for the opposition filed by Wells Fargo. The Court will direct the Clerk to correct CM/ECF to accurately reflect the nature of the filing.

3. Defendant Wells Fargo has also filed a Motion for Leave To File A Sur–Reply To Address New Issues Raised in Plaintiffs' Reply in Support of Motion to Direct Notice and Administrative Schedule. ECF No. 355. Plaintiffs argue that this surreply should not be permitted because it only addresses issues already discussed in the Opposition and responded to in the Reply, and so does not respond to matters raised for the first time in the Reply. The Court disagrees. It is true that Wells Fargo addressed the feasibility of providing bill stuffer notice in its Opposition and Plaintiffs refuted those arguments by citing a class action in which Wells Fargo provided exactly the type of notice they rejected as unfeasible. The Court finds, however, that the filing of a surreply is warranted because it addresses evidence raised for the first time in the reply. The surreply provides context for this evidence that will aid the Court in reaching a just decision. As such, the Court will grant the motion for leave to file a surreply.

Plaintiffs' Motion to Modify the RICO Class Definition to accurately reflect the RICO statute of limitations. ECF No. 333. As a result of these decisions, there currently exist the following certified classes:

*Minter:*

All consumers who have obtained a federally related mortgage loan originated by Prosperity Mortgage Company that was funded by transfers from a line of credit at Wells Fargo Bank, any of its subsidiaries or any of their predecessors. Excluded from the class are individuals whose transactions involved property located in Washington, D.C., if their transaction closed prior to December 26, 2003.

*Petry:*

All persons who entered into a mortgage loan transaction secured by real estate located in Maryland where (1) Prosperity Mortgage (2) is identified as the mortgage lender in the operative documents relating to the transaction, (3) Prosperity Mortgage received a fee for services in the transaction, and (4) the loan was funded through a Wells Fargo line of credit

The class period for the *Minter* Tolling Class and for the *Petry* class goes back to 1993, the year Prosperity began originating mortgage loans. The parties estimate that there are approximately 143,153 loans that have been certified for class treatment and, because many of those loans involved co-borrowers, over 217,000 class members. Opp'n at 4.

On October 13, 2011, Plaintiffs filed the instant motion requesting the Court to direct notice to members of the above named classes and establish an administrative schedule for the notice process. ECF No. 293. Defendants have opposed portions of the motion. There are four main areas of disagreement between the parties: (1) the content of the notices, (2) the method of providing individual notice, (3) the production of social security numbers by Wells Fargo to Class Counsel, and (4) publication of the notice.

---

4. In comparing the forms proposed by the two parties, the Court also notes that Plaintiffs' most recent version reinserts the word "sham" in the last sentence of page 1, even though it had been

## II. DISCUSSION

### A. Content of Notices

The parties have provided for the Court's review proposed versions of several different notice forms. The parties have largely agreed on the content of these documents, but have left a few issues to the resolution of the Court.

■ First, the parties agree to the content of the postcard that will be sent to individuals who are only members of the *Minter* class. This postcard is attached to Plaintiffs' Reply as Exhibit 5. ECF No. 347–5.

Second, Plaintiffs contest Defendants' proposed inclusion of the phrase, "The two separate lawsuits have not been consolidated for trial," in the postcard that will be sent to individuals that are part of both the *Minter* and *Petry* classes. This postcard is attached to Plaintiffs' Reply as Exhibit 6. ECF No. 347–6. Plaintiffs contend that such language is misleading, as the lawsuits may in the future be consolidated, and also suggest that it is irrelevant and unnecessary subject matter for class notice. The Court agrees that, as currently phrased, it is misleading. Notwithstanding, this information is helpful to make clear to class members that the classes involve two separate matters. As such, the Court will direct that the sentence be rephrased to read, "The two separate lawsuits have not been consolidated for trial at this time."

■ Third, Plaintiffs contest Defendants' proposed inclusion in the long-form *Minter* Class Notice of the phrase,

> For those class members whose loan transactions closed prior to December 26, 2006, class members will have to establish that their claims are not barred by RESPA's statute of limitations through the doctrine of equitable tolling.

This long-form notice is attached to Plaintiffs' Reply as Exhibit 7.[4] ECF No. 347–7.

---

previously removed by Defendants. As using the phrase "illegal sham" is redundant, the Court agrees that the deletion of the word "sham" is

Plaintiffs contend that such phrase is misleading because it suggests that individual class members will have to come to Court to make individual showings, which is not consistent with the Court's decision that the tolling issue is appropriate for class treatment. The Court agrees that the statement is misleading. Notwithstanding, it is important that potential class members be fully informed about the scope of the class when deciding whether to opt-out. The form currently proposed by Plaintiffs does not apprise potential class members that some of their claims are subject to the additional hurdle of equitable tolling. In order that potential class members are provided with accurate and complete information, the Court will direct that the sentence be rephrased to read:

> For those class members whose loan transactions closed prior to December 26, 2006, the class will have to establish that the claims of those members are not barred by RESPA's statute of limitations through the doctrine of equitable tolling.

■ Fourth, Plaintiffs contest Defendants proposed inclusion of two different phrases in the long-form *Petry* Class Notice. This long-form notice is attached to Plaintiffs' Reply as Exhibit 8. ECF No. 347–8. Plaintiffs reject the inclusion of the sentence, "The Court certified for class treatment claims under the Maryland Finder's Fee Act and the common law claims of unjust enrichment, restitution, and conspiracy," on page 2 of the notice as incomplete and superfluous. Plaintiffs also reject the inclusion of the phrase on page 5 that states that there is "substantial discovery" yet to be completed, and notes that Defendants did not include the same phrase in the proposed *Minter* long-form notice. The Court agrees that both phrases are unnecessary and their deletion is appropriate.

Finally, the parties have each provided proposed Administrative Orders for the Court's review. The Court has retained the

time table set forth by the parties but revised the proposals to accurately reflect its decision, *infra*, regarding how notice is to be disseminated. "Administrative Order Number One," as revised by the Court, will issue separately.

### B. Method of Providing Individual Notice

#### 1. Via Regular Mail

■ Plaintiffs have proposed that notice be provided to potential class members via mailing of postcard notices, the content of which is described *supra*. Plaintiffs indicate that Class Counsel will mail the notice to potential class members who do not receive monthly mortgage statements from Wells Fargo, and propose that Wells Fargo be ordered to enclose the notice with monthly mortgage statement for the remaining potential class members whose mortgage loans are serviced by Wells Fargo. This form of notice is known as "bill stuffer notice." Plaintiffs do not indicate which party will bear the cost to effect notice using the bill stuffer method, though presumably this omission means that Plaintiffs intend for the burden to fall to Wells Fargo.

Wells Fargo strongly objects to the bill stuffer proposal. It argues that there is no way for it to efficiently or practically enclose the notice form in the mortgage statements for the subset of its mortgage customers who are potential class members because mortgage statements are sent out to customers using an automated system. Wells Fargo indicates that it services millions of loans, only a small fraction of which fall within the class definitions, and that its automated system does not have the capability to identify which loans fall within the classes. Therefore, if Wells Fargo was to send notice to potential class members, it would have to segregate potential class members' statements from the automated billing process and stuff them separately.[5] Wells Fargo

---

appropriate, and orders Plaintiffs to revise the notice accordingly.

5. Plaintiffs suggest that Wells Fargo is being less than truthful in making these assertions, and point to a California class action, *Gutierrez v. Wells Fargo Bank N.A., et al.*, Case No. 07–5923

(N.D.Cal.), in which Wells Fargo itself advocated bill stuffer notice "as more efficient and cheaper than separate direct mailing by plaintiffs." Reply at 3 (referring to Ex. 1, "*Gutierrez* Stipulated Notice Plan and Order"). Wells Fargo points out, however, that the *Gutierrez* case involved a completely different Wells Fargo division, the

estimated that it would take at least 90 days and cost over $500,000 to provide notice to those class members whose loans it services using a bill stuffer method. *See* McCauley Decl., ECF No. 342–7 at ¶ 22. Furthermore, Wells Fargo argues, Plaintiffs have failed to provide any justification to shift the burden and cost of providing notice to Defendants.

The Court agrees with Wells Fargo that Plaintiffs must bear both the responsibility and costs to direct notice. As set out by the Supreme Court, "[t]he general rule must be that the representative plaintiff should perform the tasks [necessary to send the class notice], for it is he who seeks to maintain the suit as a class action and to represent other members of his class." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 356, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Moreover, in most cases, "the plaintiff must pay for the cost of notice as part of the ordinary burden of financing his own suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178–179, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). The Supreme Court acknowledges, however, that it may be appropriate for the Court to order the defendant to perform certain tasks related to providing notice if the defendant is able to perform such task "with less difficulty or expense than could the representative plaintiff." *Oppenheimer*, 437 U.S. at 356, 98 S.Ct. 2380. In such cases, however, the Court will generally require that the plaintiff bear the costs for such tasks, unless, for example, such tasks are already performed in the ordinary course of defendant's business or the expense is "so insubstantial as not to warrant the effort required to calcu-

late it and shift it to the representative plaintiff." *Id.* at 359, 98 S.Ct. 2380.

Plaintiffs attempt to support their argument that Wells Fargo should provide bill stuffer notice by pointing out that it would cost twice as much for Class Counsel to send notice to all class members, instead of only $50,000 to send notice to only those class members whose loans Wells Fargo is not servicing. Reply at 3. This cost differential, they suggest, illustrates the efficiencies gained from requiring Wells Fargo to provide bill stuffer notice to part of the class instead of requiring Class Counsel to provide direct notice to the entire class.

This argument is misleading, however, because the reason it will cost twice as much for Class Counsel to provide notice to the entire class as opposed to just the portion of the class that is not serviced by Wells Fargo is that the entire class is approximately twice as large as just that portion of the class not serviced by Wells Fargo.[6] The cost per class member [7] does not vary based on the number of class members for which Plaintiffs themselves must provide notice, and the $50,000 cost for Plaintiffs to provide notice to Wells Fargo's customers is substantially less than the $500,000 Wells Fargo represents it would cost to provide notice via bill stuffer to those same class members. It is not clear that there is any cost-savings or efficiency to be gained by requiring Wells Fargo to provide bill stuffer notice, and as such, the Court will deny Plaintiffs' request that Wells Fargo provide such notice and instead direct that Plaintiffs bear the responsibility to provide notice to all class members.[8]

---

retail banking division. Surreply at 2–3. Wells Fargo explains that the retail banking division uses a different billing system and vendor process than the mortgage servicing system at issue in the present matter. Therefore, it argues, just because bill stuffer notice was feasible for the *Gutierrez* class does not mean that it is also feasible for the *Minter* and *Petry* classes.

The Court accepts Wells Fargo's explanation and agrees that the *Gutierrez* case is distinguishable. As such, it would not be reasonable to hold the Defendants in the present case to the notice proposal made in the *Gutierrez* case.

6. Wells Fargo services approximately 49% of the loans in the *Minter* class and 54% of the loans in the *Petry* class. *See* Opp'n at 4.

7. The Court notes that though Plaintiffs' projected cost to direct notice to the entire class is a substantial figure (just over $100,000), when this figure is considered in view of the size of the class (over 143,000 loans or 217,000 individuals), the cost per potential class member is much more reasonable (approximately $.70 per loan or $.46 per class member).

8. The Court also notes that, as Plaintiffs failed to provide any reason to justify shifting the costs of bill stuffer notice to Wells Fargo, if the Court determined that such method of notice was appropriate Plaintiffs would have been required to pay such costs. In light of Wells Fargo's estimate that it would cost $500,000 to effect such notice, however, the Court assumes that Plain-

## 2. Via Email

Plaintiffs also propose that Wells Fargo be ordered to provide notice via email to its customers who receive monthly email notifications when their mortgage statements become available for viewing. Wells Fargo opposes this proposal, stating that it "does not have a 'system in place to efficiently distribute' notice by e-mail." Opp'n at 8 (quoting Houghtlin Decl. at ¶ 7). Wells Fargo further explains that in order to effect notice via email it would first have to identify which of its current customers that receive emails notifying them of statement availability are class members and then design and implement a specific email containing the appropriate form of class notice directed to only those individuals. Opp'n at 9. Wells Fargo does not provide an estimate of the time and cost involved if it was required to provide notice in this manner, but the Court assumes that it would be substantial, as these are not tasks that Wells Fargo would otherwise perform in the course of its ordinary business.

Plaintiffs only rebuttal to these arguments is denying the truth of Wells Fargo's statements regarding the difficulty of providing class notice via email by pointing to a distinguishable case, *see supra* note 5, in which Wells Fargo provided notice in this manner.[9]

Plaintiff has not established that it would be less difficult or expensive for Wells Fargo to provide notice using its email billing-notification system than to require Plaintiffs to provide notice to these same class members via individual mailings. Furthermore, Wells Fargo indicates that it likely only has current email addresses for a minority of class members, so any savings gleaned by reduced printing and postage costs is likely minimal and certainly outweighed by the cost of time and labor for Wells Fargo to effect email notice. As such, Plaintiffs may not shift the burden of providing notice to Wells Fargo, and the Court will order that Plaintiffs direct notice to all potential class members via individual mailing.

## C. Production of Social Security Numbers

■ In their Motion, Plaintiffs indicate that they may find it necessary to request that Defendants produce social security numbers and telephone numbers for specific class members that they have difficulty locating. Mot. at ¶ 4a. They further explain in their Reply that such information will help Class Counsel obtain current addresses for class members who have moved away from the property they financed with a Prosperity mortgage, noting that locating class members may be particularly difficult in this case because the class includes borrowers whose loans closed in the early 1990s. Reply at 11–12.

Wells Fargo objects to this request, raising the issue of their customers' privacy interest in confidential and personal information. Opp'n at 12 n. 11. Wells Fargo points to this Court's decision in *Benway v. Resource Real Estate Services, LLC,* to support its objection. In *Benway,* another RESPA class action, the Court determined that the defendants were not required to produce social security numbers absent "some further showing of necessity by Plaintiffs." Slip Op. No. 05–3250 at 4 (D.Md. Jan. 16, 2007). In that case, the class period spanned a little over two years, so the likelihood that class members had moved and plaintiffs would need to obtain up-to-date addresses was fairly low. *See id.* at 3 (Order dated January 16, 2007, stated that "the proposed notice of class action should refer to potential class members whose transaction occurred on or after October 25, 2004"). The present case, however, is distinguishable because it is highly likely that a large number of the class members, some who closed on loans nearly 20 years ago, have relocated, necessitating Class Counsel's use of social security numbers to obtain up-to-date address information in order to fulfill the notice requirements of Rule 23(c)(2).[10]

---

tiffs would prefer to complete the task of giving notice themselves.

**9.** Notably, Plaintiffs again fail to state which party would bear the cost if Wells Fargo was

required to provide notice using its email billing-notification system.

**10.** Wells Fargo notes that it does not have current mailing addresses for 49% of the class.

The Court instead will follow its ruling in *Robinson v. Fountainhead Title Group Corp.*, another RESPA case: "in a case like this, where class members may have moved, [the provision of Social Security numbers] is more likely to provide a meaningful opportunity for class members to recognize their involvement in this case." Civ. No. 03–3106, 2009 WL 2842733, *1 (D.Md. Sept. 4, 2009).[11] As such, the Court will overrule Defendants' objection and require that, consistent with Administrative Order Number One, Defendants produce the social security numbers and telephone numbers for potential class members as necessary to assist class counsel in providing the best notice practicable pursuant to Rule 23(c)(2).[12]

## D. Publication of Notice

Wells Fargo argues that in addition to providing individual notice by mail, Class Counsel should also be required to provide notice via publication. Wells Fargo suggests that notice by mail-only will be insufficient to satisfy the requirements of due process and Rule 23(c)(2) because the parties do not have current addresses for nearly half of the potential class members. Plaintiffs oppose this suggestion and state that requiring notice by publication would unnecessarily increase costs and be duplicative of the notice provided by individual mailings.

 Because class action litigation is binding on all class members unless a potential class member affirmatively opts-out, the notice requirement has due process implications. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974). To satisfy the requirements of due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The method chosen to effect notice must be "such as one desirious of actually informing the absentee might reasonably adopt to accomplish it." *Id.* This standard is a practical one, however, and does not require that notice be provided to every single class member if the circumstances would make such an expectation unreasonable and impracticable. In such circumstances, notice to a majority of those interested in the action is likely sufficient to protect the interests of those absent. *Id.* at 319, 70 S.Ct. 652 ("notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all, since any objection sustained would inure to the benefit of all"); *see also* Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 1786.

 Moreover, as this Court has already recognized in *Robinson*:

"It is beyond dispute ... that notice by first class mail ordinarily satisfies rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'" *Peters v. National R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C.Cir.1992) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–75, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)). In fact, the United States Supreme Court has often

11. A number of cases have recognized this same proposition and have required the disclosure of this information. *See, e.g., Rees v. Souza's Milk Transp. Co.*, 2006 WL 3251829, *1 (E.D.Cal. Nov. 8, 2006) ("The disclosure of names, addresses, social security numbers ... is a common practice in the class action context. It has been used, so that putative class members can be located, in a variety of contexts ...."); *Upshaw v. Georgia Catalog Sales, Inc.*, 206 F.R.D. 694 (M.D.Ga. 2002) (ordering defendants to provide class list that included names, last known addresses, telephone numbers and social security numbers); *see also Proctor v. Metropolitan Money Store Corp.*, No. 07–19157, ¶ 4 (D.Md. Aug. 4, 2009) (requiring defendants to provide a class list including the names, social security numbers, addresses, telephone numbers and date of transaction of each class member).

12. Wells Fargo also noted that social security information "is not readily accessible," but does not explain why this is or the difficulty that would be encountered if required to produce such information. As Class Counsel suggests it will not need social security numbers for all class members, but only those it has particular difficulty in contacting, such burden does not outweigh the requirement to provide the best practicable notice to potential class members. This limitation also minimizes the intrusion into class members' privacy interests, as it does not require social security numbers to be produced on a class-wide basis.

upheld the use of first class mail as a method of notice reasonably calculated to apprise interested parties of proceedings affecting their rights despite the fact that "[t]he Supreme Court is obviously aware[ ] that not every first-class letter is received by the addressee." *Peters*, 966 F.2d at 1486 (citing, *inter alia*, *Tulsa Professional Collection Servs. Inc. v. Pope*, 485 U.S. 478, 484, 491, 108 S.Ct. 1340, 99 L.Ed.2d 565 (1988) (notice to creditors of estate)). 2009 WL 2842733 at *1. In the present case, all class members have been identified by name from Defendants' records. Defendants do not suggest that publication is necessary to reach unknown class members, but only that it is necessary because of the potential difficulty in contacting class members who have moved away from their Prosperity-financed homes. Class Counsel has stated that it intends to use the National Change-of-Address database to obtain current address information. Though, as Defendants point out, this database only retains change of address information for a limited period of time,[13] Class Counsel will also be able to utilize social security numbers and phone numbers to locate class members whose contact information is not available in the database. By providing individual notice to class members for whom Wells Fargo has current address information and also providing notice to individuals that Class Counsel is able to locate through additional tracing, the Court is confident that individual mailing will be sufficient to provide notice to the vast majority of potential class members,[14] and thus satisfy the requirements of Rule 23(c)(2) without the need for publication.

## III. CONCLUSION

For the above stated reasons, Plaintiffs' Motion to Direct Notice and Administrative Schedule will be GRANTED as amended by

the Court. A separate order consistent with this memorandum will be issued.

---

**13.** The U.S. Postal Service website indicates that the "full NCOA Product contains ... 48 months of permanent address changes." https://www.usps.com/business/move-update.htm (last visited May 21, 2012)

**14.** A spreadsheet provided by Paul Mulholland, the President of a company that provides assistance in the administration of class action litigation and who was retained by Plaintiffs, indicates

that there is a "92% hit rate" when "skip tracing" using social security numbers. Opp'n at Ex. 2. The Court notes that "skip tracing" is a practice, often engaged in by collection agencies, in which an agent seeks to locate a missing person using identifying information, such as social security numbers. *See United States v. Cummings*, 395 F.3d 392, 394 (7th Cir.2005).